**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KRISTA MUELLER, individually and on behalf of all similarly-situated persons, | ) ) ) JURY TRIAL DEMANDED |
| Plaintiffs, | ) ) Case No. 17-cv-6779 |
| v. | ) ) Judge |
| MEDSERVICE REPAIR, INC. and JOE FENTON, individually | ) Magistrate Judge ) |
| Defendants. | ) ) ) ) |

## COMPLAINT

**NOW COMES** the Plaintiff, KRISTA MUELLER ("Mueller"), by and through her undersigned attorneys, on behalf of herself and other similarly-situated persons, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq.*, the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq.*, and the common law of Illinois, and complains of Defendants MEDSERVICE REPAIR, INC. and JOE FENTON, an individual, (collectively "Defendants"), as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1.      This lawsuit arises as a result of (1) Defendants' practice of compensating Mueller and other similarly situated employees at a rate of pay which was less than the minimum wage, (2) Defendants' failure to pay earned wages in breach of Mueller's employment agreement, and (3) Defendants' termination of Mueller's employment in retaliation for her statutorily-protected opposition to the Company's illegal wage and hour practices.

## JURISDICTION

2.      Counts I and IV of this action are brought pursuant to the FLSA, 29 U.S.C. § 201 *et seq*, and Counts II, III, V and VI are brought under Illinois law pursuant to the IMWL, 820 ILCS § 105/1, *et seq*., IWPCA, 820 ILCS § 115/1 *et seq*., the IWA, 740 ILCS 174/1 *et seq*., and the common law of Illinois.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the State claims under 28 U.S.C. § 1367.

## PARTIES

3.      Mueller is a resident of Libertyville, Illinois. Mueller worked for Defendants as an Account Manager from on or about October 25, 2016 through on or about July 25, 2017.

4.      At all relevant times, Joe Fenton has been the President and Chief Executive Officer ("CEO") of Defendant MedService Repair, Inc. ("Medservice").  Fenton knowingly permitted the violations complained of herein.

5.      MedService is an Illinois corporation which provides endoscopic products, services and refurbished equipment to hospitals, clinics and surgery centers across the United States, Canada, Puerto Rico and the Virgin Islands.

6.      Defendants' offices and principal place of business are in Mundelein, Illinois. Mueller worked at this location throughout her employment.

7.      During the time she worked for MedService, Mueller was an "employee" of MedService and of Fenton within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), IMWL, 820 ILCS § 105/3(d), IWPCA, 820 ILCS § 115/2, and the IWA 740 ILCS 174/5.  Mueller was an "employee" of MedService pursuant to the common law of Illinois.

8. MedService and Fenton were Mueller's "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d), IMWL, 820 ILCS § 105/3(c), IWPCA, 820 ILCS § 115/2 and IWA, 740 ILCS 174/5. MedService is an "employer" pursuant to the common law of Illinois.

## FACTUAL BACKGROUND

9. Mueller was hired by Defendants as an Account Manager on or about October 25, 2016. As an Account Manager, Mueller's job was to generate sales of MedService's products and services. Mueller was assigned a territory, South Carolina, to pursue leads and generate sales including via telephonic sales calls.

10. At any given time, MedService employs five to seven Account Managers. Each Account Manager is also assigned a geographic territory in the United States, Canada, Puerto Rico or the Virgin Islands. Account Managers perform the same or similar job functions with respect to the pursuit of leads and generation of sales. Turnover in this position is frequent.

11. Account Managers make telephone sales calls to leads in their assigned territories from MedService's office in Mundelein, Illinois. Account Managers are assigned to work six (6) hour shifts, and generally work five days per week. Account Managers report to supervisor Dan Fenton, Joe Fenton's brother.

12. At hire, Defendants agreed to pay Mueller at a rate of $10 per hour plus commission for the first six months of her employment, after which time she would be compensated on a commission-only basis with no guaranteed hourly wage. Account Managers at MedService are paid pursuant to similar compensation agreements.

13.     Beginning in or about April 25, 2017, Defendants began paying Mueller on a commission only basis.  On or about April 18, 2017, Mueller requested that her hourly wage be extended, and Defendants rejected this request.

14.     After April 25, 2017, Mueller was compensated at a rate of pay which was substantially less than the minimum wage.  For instance, for the pay date June 1, 2017, Mueller's gross pay was $40.00, despite Mueller having worked sixty-six (66) hours during that pay period. Mueller's gross earnings for the pay date of June 15, 2017 equaled $60, despite Mueller having worked 58 hours during that pay period.  Mueller's gross earnings for the pay date of June 30, 2017 amounted to $155.80, despite Mueller having worked sixty-six (66) hours during that pay period.

15.     On information and belief, other Account Managers were similarly paid less than minimum wage during pay periods in which their earned commissions were less than the hours they worked times minimum wage.

16.     During her employment, Defendants failed to pay Mueller at least one earned commission pursuant to MedService's October 28, 2014 Commission Policy.  This Policy provided for a "90% cash bonus" for "Any STOCK item never bought before, the second time they order that item (only 1 of the item)."  Mueller fulfilled the requirements of this Policy with respect to an order dated July 3, 2017, but never received her 90% cash bonus.

17.     At hire, Defendants agreed to pay Mueller a sum of $150 per month to be used for Mueller's private health insurance benefits.  Defendants failed to make these payments at any point during Mueller's employment and through the present.

18.     On or about late May 2017, Mueller spoke to an agent with the Illinois Department of Labor and told her that the Company was paying Account Managers less than minimum wage.

They discussed options for filing a wage and hour claim against the company, including filing a claim with the Illinois or U.S. Departments of Labor or a private lawsuit.

19. On or about July 10, 2017, Mueller told Dan Fenton that she was not making enough money in commissions and asked for an extension of the $10/hour wage she received during her probationary period. Fenton said, 'that's never going to happen.'

20. On or about July 24, 2017, Mueller told Dan Fenton that Med-Service 'has a choice to pay me fairly,' and requested that she be assigned another state to her territory, to allow more opportunity to earn commissions. Mueller also stated, 'How can you sleep at night knowing you're paying me sixty-six cents to $1 an hour?' Fenton shook his head and smirked. During this conversation, Fenton also berated Mueller and stated 'the money you make in commissions is all up to you.'

21. On or about July 25, 2017, Mueller complained to Joe Fenton. Among other things, Mueller told Fenton that she had spoken to the Illinois Department of Labor and to an attorney, and 'How you're paying me is illegal.' She also asked if Fenton was aware that three out of four of her last paychecks were less than $50. Fenton stated he would look into it.

22. About two hours later, Joe Fenton terminated Mueller's employment. Fenton slid a spreadsheet across the desk which listed the hours she worked, her earnings from April 25, 2017 through the end of her employment, and the amount she was "owed." The amount "owed" reflected the difference between Mueller's actual wages and the hours she worked times minimum wage ($8.25/hr). Fenton advised that she would receive the amount "owed" with her final pay check. Fenton stated, 'What can I say, this is a shitty place to work.' Fenton also stated that Mueller should apply for unemployment, but she was unsure about whether he was being serious or sarcastic.

23.     Mueller's termination was in retaliation for her attempts to enforce statutory rights conferred by the FLSA and IMWL, and for her complaints to the IDOL regarding Defendants' illegal wage and hour practices.

24.     Mueller's final paycheck did not include the full amount which Fenton agreed to pay her when he terminated her employment on July 25, 2015, nor did the compensation include liquidated damages and other penalties required for late payment under the FLSA, IMWL and IWPCA.

25.     Mueller has suffered significant damages as a result of Defendants' conduct.

## COUNT I
### *Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act*
### FLSA COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiff incorporates paragraphs 1-25 as if fully set forth herein.

27.     Plaintiff seeks to represent an FLSA class comprised of and defined as:

all persons who have been employed by Defendants or their predecessors or successors as Account Managers from August 2014 through and including the present and until final resolution of the case, and who have not been paid the statutory minimum wage for all regular hours worked (herein "FLSA Class").

28.     This Count is brought as a collective action pursuant to 29 U.S.C. § 216(b).

29.     Mueller and members of the proposed FLSA Class have been equally affected by the violations of Defendants, which amount to a single decision, policy or plan to avoid paying Account Managers the full minimum wage.

30.     As described above, Defendants' policy and practice of paying Account Managers on a "commission only" basis has caused Mueller and other Account Managers to be paid less than the statutory minimum wage.

-6-

31.     A collective action is an appropriate method for the fair and efficient adjudication of this lawsuit.

32.     The books and records of Defendants are material to Plaintiffs' case as they disclose shifts and hours worked by members of the FLSA Class and the amounts they were paid for that work.

33.     Under the FLSA, 29 U.S.C. §206 Defendants were required to compensate plaintiffs at minimum wage for hours worked.

34.     As set forth above, Defendants regularly required, suffered and permitted Mueller and the FLSA Class to work hours for which they were compensated at rates less than the minimum wage.

35.     As a result of Defendants' policy and practice of failing to pay at least the minimum wage for all their work time, Mueller and the FLSA Class have been damaged and have not received wages due and owing, pursuant to the FLSA.

36.     The FLSA requires timely payment of statutory wages, i.e., on the next regular payday. 29 C.F.R. 778.106. Defendants' delayed payment to Mueller of unpaid minimum wages does not relieve them of other relief mandated by the FLSA, including liquidated damages. *See, James Dominici, et al., v. Board of Education of the City of Chicago*, 881 F.Supp. 315 (N.D. Ill. 1995).

37.     Defendants' conduct complained of herein was willful and intentional, in that Defendants knew, required, and approved Mueller and the FLSA Class to work hours at rates which were substantially less than the required minimum wage.

**WHEREFORE,** Mueller respectfully request this Court enter judgment in her favor, and in favor of the FLSA class, and against Defendants for the following:

a.  An award of back pay equal to the amount of all unpaid minimum wage compensation;

b.  Finding Defendants' conduct alleged herein to be been willful, and an award of compensation for at least three years prior to the filing of this action;

c.  An award of liquidated damages equal to the amount of all unpaid minimum wage and overtime compensation or, alternatively, prejudgment interest;

d.  Attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b); and,

e.  Such other relief as this Court deems necessary and just.

<u>**COUNT II**</u>
*Violation of the Illinois Minimum Wage Law - Minimum Wages*
<u>**IMWL CLASS ACTION ALLEGATIONS**</u>

38.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 above as if fully set forth herein.

39.  With respect to the IMWL claims, Mueller seeks to represent a class that is comprised of and defined as:

all persons who have been employed by Defendants or their predecessors or successors as Account Managers form August 2014 through and including the present and until final resolution of the case, and who have not been paid the statutory minimum wage for all regular hours worked (herein "IMWL Class").

40.  This Count is brought as a class action pursuant to the Federal Rules of Civil Procedure Rule 23.

41.  Because the IMWL Class is so numerous, joinder of all class members is impracticable.  Additionally, the threat of retaliation, the fact that members of the proposed class are disbursed due to employee turnover, and the fact that the amount of potential damages for some class members may deter them from bringing suit against a current or former employer also make joinder impracticable.

-8-

42.     Mueller and members of the IMWL Class have been equally affected by the violations of Defendants.

43.     The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations, if any, which may exist between the members of the class.

44.     Mueller and the IMWL Class have a commonality of interest in the subject matter and the remedy sought.

45.     Mueller is able to fairly and adequately represent and protect the interests of the IMWL Class.

46.     Plaintiffs' undersigned counsel is competent and experienced in litigating large wage and hour and other employment actions.

47.     If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the IMWL Class, to the Court and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

48.     Under the Illinois Minimum Wage Law, 820 ILCS 105/4, Defendants were required to pay Account Managers at least the minimum wage for all regular hours worked.

49.     Defendants regularly paid Mueller and the IMWL Class at a rate of pay which was less than the Illinois Minimum Wage.

50.     Defendants' conduct complained of herein was willful and intentional, in that Defendants knew, required, approved and/or suffered or permitted Mueller and the class to work at rates less than those required by the IMWL.

51.     As a result of Defendants' violation of the IMWL, Mueller and the class have been damaged in that they have not received wages due and owing pursuant to the IMWL.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants for the following:

a.     Actual damages;
b.     2% of the amount of underpayments for each month following the date of payment during which such underpayment remains unpaid pursuant to 820 ILCS § 105/12;
c.     Attorneys' fees and costs of this action pursuant to 820 ILCS § 105/12(a); and,
d.     Such other relief as this Court deems necessary and just.

### COUNT III
### Violation of the Illinois Wage Payment And Collection Act

52.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 above as if fully set forth herein.

53.     Section 2 of the IWPCA, 820 ILCS § 115/2, defines wages as "any compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties, whether the amount is determined on a time, task, piece, or any other basis of calculation."

54.     Section 4 of the IWPCA, 820 ILCS § 115/4, provides that every employer shall pay "all wages earned by any employee during a semimonthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages are earned."

55.     Section 5 of the IWPCA, 820 ILCS § 115/2, provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

56.     As set forth above, Defendants failed to pay Mueller the wages she earned pursuant to her employment agreement, including: (1) the $150 per month payment for health insurance; (2) an earned commission; and (3) the full amount of the final compensation which Joe Fenton promised to pay her at the time of her termination.

57.     Defendants failure to pay these earned wages and benefits breached her employment agreement, and therefore violated the IWPCA.

**WHEREFORE,** Mueller respectfully requests this Court enter judgment in her favor and against Defendants for the following:

    a.      Actual damages;
    b.      2% of the amount of underpayments accrued, with payments to commence on January 1, 2011, for each month following the date of payment during which such underpayment remains unpaid pursuant to 820 ILCS §115/14;
    c.      Attorneys' fees and costs of this action; and
    d.      Such other relief as this Court deems necessary and just.

## Count IV
## FLSA Retaliation

58.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 above as if fully set forth herein.

59.     Under the FLSA, it is unlawful for an employer to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3). Oral complaints are considered protected activity under the FLSA's anti-retaliation provision where they provide fair notice that the employee is asserting rights under the FLSA.

60.     Mueller's above-described complaints to Joe and Dan Fenton regarding the Company's failure to pay minimum wage provided fair notice that she was asserting rights under the FLSA, including the right to be paid at least the minimum wage.

61.     Defendants' termination of Mueller's employment was a pretext for unlawful retaliation for her assertion of her statutory rights.

62.     Defendants have also engaged in ongoing retaliatory conduct post-employment through repeated and meritless denials of Mueller's right to unemployment benefits.

63.     Mueller has suffered financial and pecuniary loss, emotional distress, and damage to her career as a result of Defendant's retaliatory conduct.

**WHEREFORE,** Mueller respectfully requests this Court enter judgment in her favor and against Defendants for the following:

a.      Award her reinstatement to her former position with the same seniority status and benefits that she would have had, but for the subject violations of the FLSA or, alternatively, for an appropriate award of lost front pay and benefits;

b.      Award her appropriate lost back pay and benefits, and reimbursement for other employment related losses related to the termination of her employment and other retaliatory treatment, plus interest, so as to render her whole;

c.      Award her compensatory damages for emotional stress, humiliation, and anxiety, in an amount to be shown at trial as authorized by law, and for damages for lost future earnings capacity;

d.      Liquidated Damages;

e.      Compensatory Damages;

f.      Punitive Damages

g.      Attorneys' fees and costs of this action; and

h.      Such other relief as this Court deems necessary and just.

**Count V**
**Illinois Whistleblower Act**

64.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 64 above as if fully set forth herein.

-12-

65. Section 174/15(b) of the IWA provides: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15.

66. Section 174/20 of the IWA provides: "An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20.

67. As set forth above, Mueller disclosed Defendants' violations of the IMWL to the Illinois Department of Labor (IDOL). In so doing, she had reasonable cause to believe that the information she disclosed to the IDOL related to a violation of the IMWL and the FLSA.

68. Defendants violated Section 15 of the IWA by terminating her employment in retaliation for her disclosures to the IDOL.

69. Defendants violated Section 15(b) of the IWA by terminating Mueller's employment in retaliation for her having disclosed information to the IDOL regarding its practice of failing to pay minimum wage to Account Managers.

70. Defendants' termination of Mueller's employment was effectuated by Joe Fenton, the President and CEO of the Company, and reflected a policy of preventing her from disclosing information to the IDOL.

71. Mueller has suffered financial and pecuniary loss, emotional distress, and damage to her career as a result of Defendants' retaliatory conduct.

-13-

**WHEREFORE,** Mueller prays for judgment against the Defendants, jointly and severally, including the following:

A.   Award her reinstatement to her former position with the same seniority status and benefits that she would have had, but for the subject violations of the Illinois Whistleblower Act or, alternatively, for an appropriate award of lost front pay and benefits;

B.   Award her appropriate lost back pay and benefits, and reimbursement for other employment related losses related to the termination of her employment and other retaliatory treatment, plus interest, so as to render her whole;

C.   Award her compensatory damages for emotional stress, humiliation, and anxiety, in an amount to be shown at trial as authorized by law, and for damages for lost future earnings capacity;

D.   Award her litigation costs, expert witness fees, reasonable attorneys' fees, and any other relief as authorized by 740 ILCS 174; and

E. Any relief this Court deems just and proper.

### Count VI
### Retaliatory Discharge in Contravention of Illinois Public Policy

72.      Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 71 above as if fully set forth herein

73.      Section 2 of the IMWL provides:

The General Assembly finds that the existence in industries, trades or business, or branches thereof, including offices, mercantile establishments and all other places of employment in the State of Illinois covered by this Act, of conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers, leads to labor disputes, and places burdens on the State, and all other subordinate political bodies thereof, to assist and supply necessary moneys and goods to workers and their families to aid them to exist on a minimum budget for their needs, and thus places an unnecessary burden on the taxpayers of this State. Therefore, it is the policy of this Act to establish a minimum wage standard for workers at a level consistent with their health, efficiency and general well-being; to safeguard such minimum wage against the unfair competition of wage and hour standards which do not provide such adequate standards of living; and to sustain purchasing power and increase employment opportunities.  It is against public policy for an employer to pay to his employees an amount less than that fixed by this Act. Payment of any amount less than herein fixed is an unreasonable and oppressive wage, and less than sufficient to meet the minimum cost

-14-

of living necessary for health. Any contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is void."

820 ILCS 105/2.

74.     MedService terminated Mueller's employment in retaliation for her opposition to their illegal practice of paying Account Managers less than the State's minimum wage, including for her report to the Illinois Department of Labor.

75.     Mueller believed in good faith that MedService was violating the IMWL when she complained about MedService's failure to pay minimum wage to Account Managers.

76.     MedService's termination of Mueller's employment was in contravention of the clearly mandated public policy of the State of Illinois, and was intended to deter her from enforcing statutory rights on behalf of herself and others and from reporting Defendants' violations of the law.

**WHEREFORE,** Mueller prays for judgment against Defendant MedService, including the following:

A.   Award her reinstatement to her former position with the same seniority status and benefits that she would have had, but for the retaliatory discharge, or, alternatively, for an appropriate award of lost front pay and benefits;
B.   Award her appropriate lost back pay and benefits, and reimbursement for other employment related losses related to the termination of her employment and other retaliatory treatment, plus interest, so as to render her whole;
C.   Award her compensatory damages for emotional stress, humiliation, and anxiety, in an amount to be shown at trial as authorized by law, and for damages for lost future earnings capacity;
D.   Award her punitive damages;
E.   Award her litigation costs; and
F.   Any relief this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully submitted,

/s/   M. Nieves Bolaños
One of Plaintiffs' Attorneys

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
Patrick Cowlin, Esq.
POTTER & BOLAÑOS, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
312-861-1800
robin@potterlaw.org
nieves@potterlaw.org
patrick@potterlaw.org

-16-